**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**SAVANNAH DIVISION**

| | |
|---|---|
| **JOHN DOE,**<br>　　　**Plaintiff,** | |
| **v.** | **Case No.** _____ |
| **THE SAVANNAH COLLEGE OF**<br>**ART AND DESIGN, INC.**<br>　　　**Defendant.** | |

## MEMORANDUM IN SUPPORT

John Doe submits this Memorandum in Support of his Emergency Motion

for Temporary Restraining Order and Preliminary Injunction.

## PROCEDURAL BACKGROUND

Plaintiff notes to this Court that much of the following information is taken

from defendant's Hearing Officer Decision dated Dec. 20, 2022. Since defendant

has not provided to Plaintiff any actual, tangible evidence in this case, Plaintiff is

unable to verify all dates or provide any evidence for this Court's review.

1.  The incident was reported to the Deputy Coordinator on January 21, 2022.

2.  The Deputy Coordinator conducted an Intake Meeting with the
    Complainant on January 26.

3.  During the Intake Meeting, the Complainant provided a written narrative as
    well as evidentiary materials.

4.  The case was closed on February 24, 2022 because the Complainant was not responsive regarding whether she desired to activate the Grievance Process at that time.

5.  On August 12, 2022, the case was reopened when the Complainant submitted a signed Complainant Form on which she indicated she was not interested in pursuing an Informal Resolution. As such, per the Grievance Process, the matter was then moved to the formal investigation process.

6.  The Deputy Coordinator conducted a second Intake Meeting with the Complainant on August 22, 2022 to re-review the Grievance Process and respond to outstanding questions.

7.  The Notice of Complaint was simultaneously sent to the Complainant and the Respondent on August 23, 2022.

8.  The Deputy Coordinator conducted an Intake Meeting with the Respondent on August 24, 2022.

9.  The Investigator was appointed on August 23, 2022.

10. The Investigator outreached to witnesses, conducted interviews, and gathered other evidence from August 23 through September 30, 2022.

11. The draft Investigation Report and evidence were provided to the Complainant and the Respondent on October 24, 2022.

12. The Complainant nor the Respondent provided a response to the draft Investigation Report and evidence.

13. The Investigator submitted the final Investigation Report to the Title IX Coordinator(s) on November 17, 2022.

14. The final report was shared with the Parties and their Advisors on November 22, 2022.

15. Pre-hearing meetings with the Parties and witnesses to review the process and answer questions were held with the Deputy Coordinator from December 1 to 9, 2022.

16. The live hearing into the Complaint was held on December 12, 2022.

17. Plaintiff was notified on December 27, 2022 that the Hearing Officer found him, by the preponderance of the evidence, responsible for vaginal penetration of the Complainant after consent was revoked.

18. The following sanctions were received by Plaintiff:

    a. Suspension with reenrollment to resume no sooner than fall 2023;

    b. Respondent must submit proof of completion of personal decision-making education prior to reenrollment;

    c. Respondent must submit 1,000 word minimum essay regarding Informed consent" (with citations) prior to reenrollment; and

    d. No Contact Order" (NCO) remains in effect indefinitely.

## PRELIMINARY INJUNCTION STANDARD

In determining whether to grant a preliminary injunction, the district court must consider: (1) the movant's likelihood of success on the merits of its claims; (2) whether and to what extent the movant will suffer irreparable harm if the injunction is withheld; (3) the balance of hardships as between the parties; and (5) the effect, if any, that an injunction (or the withholding of one) may have on the public interest." FRCP Rule 65.

Of these factors, "[t]he movant's likelihood of success on the merits weighs most heavily in the preliminary injunction calculus." *Ryan v. U.S. Immigr. & Customs Enft*, 974 F.3d 9, 18 (1st Cir. 2020). A party "need not prove its claims at the preliminary injunction stage, only that it is likely to be able to prove its claims later." *Kleczek on Behalf of Kleczek v. R.I. Interscholastic League, Inc.,* 768 F. Supp. 951, 953 (D.R.I. 1991).

In addition to Title IX, 20 U.S.C. §1681-§1688, the operative contracts that have been violated are SCAD's Student Misconduct Policy ("Policy") and Grievance Process for the Sexual Misconduct Policy ("Grievance Process"). Relevant here, the Grievance Process entitles the Plaintiff to the presumption "that the Respondent is not responsible for the alleged conduct until a determination regarding responsibility is made at the conclusion of the grievance process. The grievance process includes any important phase of the process, including an

appeal, that will affect Doe's rights, such as his continuing education, access to campus, or participation in school sponsored activities.

Defendant has failed to demonstrate anything that indicates they afforded Plaintiff a presumption that he was not responsible for the alleged conduct as required by the contract. Rather, SCAD conducted an investigation that is riddled with numerous errors, leading to suspension of a student just seven classes shy of graduation.

## DISCUSSION

SCAD is a private school who receives federal financial assistance. To find a Title IX violation for a private school, one of the categories a Court must consider is erroneous outcome.

To succeed on claims of Title IX violations against a private institution such as SCAD, the Plaintiff must plead "sufficient facts to cast some articulable doubt on the accuracy of the outcome of the disciplinary hearing as well as a particularized causal connection between the flawed outcome and gender bias."

Under SCAD's Policy, an appeal may be made on the following bases:

1. Procedural irregularity that affected the outcome of the matter;

2. New evidence that was not reasonably available at the time the determination regarding responsibility or dismissal was made, that could affect the outcome of the matter; and

3. The Title IX Coordinator(s), Investigator(s), Hearing Officer(s), or Sanctioning Officer(s) had a conflict of interest or bias that affected the outcome of the matter.

## A. Likelihood of success on the merits

Plaintiff has a high likelihood of success on the merits. The discussion below will show Title IX violations, procedural irregularities, gender discrimination[1], and institutional bias by the Hearing Officer. Individually, many of them could rise to the level of erroneous outcome. Taken together, SCAD policies and actions have forged a path that, without injunction by this Court, could destroy this young man's life and future. Dozens of procedural errors and irregularities undoubtedly affected the outcome of the matter. Further, given the sheer volume of procedural errors, sex discrimination against plaintiff likely occurred in this case.[2] Lastly, the numerous Title IX and policy violations by SCAD create strong arguments that having the Dean of Students preside as the Hearing Officer created an institutional bias that affected the outcome of the matter.

## B. But for an injunction by this Court, immediate, irreparable harm will occur.

---

[1] "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal assistance." Title IX

[2] 34 CFR § 106.45(a): treatment of a Complainant or a Respondent in response to a formal complaint of sexual harassment may constitute discrimination on the basis of sex under Title IX.

Irreparable harm exists "'where, but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied.'" *United States SEC v. Daspin*, 557 F. App'x 46, 48 (2d Cir. 2014) (citation omitted). Where a movant seeks a "mandatory preliminary injunction that alters the status quo," rather than a "prohibitory injunction seeking only to maintain the status quo," the burden of proof is more stringent. *Cacchillo v. Insmed, Inc.*, 638 F.3d 401,406 (2d Cir. 2011).

It is not speculative to presume that a suspension notation on Plaintiff's permanent record will have lasting, negative ramifications. See *Doe v. Univ, of Conn.*, 2020 WL 406356, at 2 (D. Conn. Jan. 23, 2020) (finding irreparable harm where the student "would also need to explain the suspension notation on his UCONN transcript, and a truthful explanation would seriously hinder his prospects"); *Doe v. Middlebury Coll.*, 2015 WL 5488109, at 3 (D. Vt. Sept. 16, 2015) (finding irreparable harm where the student "would have to explain, for the remainder of his professional life, why his education either ceased prior to completion or contains a gap"); *King v. DePauw Univ.*, 2014 WL 4197507, at 13 (S.D. Ind. Aug. 22, 2014) (finding irreparable harm where Plaintiff would "forever have either a gap or a senior-year transfer on his record," noting the inevitability of questions by future employers or graduate schools for which "any explanation is unlikely to fully erase the stigma").

Unless enjoined by this Court, Defendant will begin sanctions against Plaintiff immediately in accordance with its Policy, which states in relevant part "If an appeal is filed, the determination regarding responsibility becomes final on the date that the University provides the parties with the written determination of the result of the appeal. If an appeal is not filed, the determination regarding responsibility becomes final on the date on which an appeal would no longer be considered timely." (Grievance Process at XII (7)). Here, copies of this filing will be provided to defendant by the requisite appeals deadline; however, Plaintiff notes any appeal submitted prior to having full and complete copies of the investigation file may not lead to an overturning of the findings. To submit an appeal without evidence, which is in essence what SCAD is requiring of Plaintiff here, further sets him up for failure. Worst case scenario, according to SCAD's sanctions policy, sanctions against Plaintiff begin immediately, Jan. 6, 2023.

**C. The public interest in ensuring SCAD complies with procedural due process and Title IX weighs heavy in favor of preliminary injunction.**

The balance of the equities favors the Plaintiff. SCAD's interest in protecting the Plaintiff's accuser is mitigated by the fact that a no-contact order is in place between the Plaintiff and her and he has not contacted her since before it was entered (and, generally, in more than a year). Eleven (11) non-incidental months passed between the date of the incident and notice of the complaint, and five (5) months have now passed since the date of the complaint. To wit, Plaintiff

8

has been on campus for more than a year without incident. Moreover, SCAD's interest here is in ending the conduct and preventing its recurrence by the Respondent.[3] If SCAD's purpose is truly remedial in nature and designed to prevent recurrence of the conduct, as stated in their Grievance Process, then a no-contact order that has been meticulously followed for approximately a year should be sufficient. SCAD should have no vested interest in pursuing disciplinary sanctions that would yield loss of education, scholarships, and so much more.

Nearly one and a half years has passed without incident, and a no-contact order has been in place for a significant period of time without incident. The suspension and subsequent ramifications, which will create irreparable harm to Plaintiff, are disproportionate to the stated purpose of sanctions and, quite frankly, are disproportionate to the facts of the case. Plaintiff will outline below the myriad errors and violations that have riddled this case. Some sections will be placed into charts for ease of interpretation.

---

[3] Grievance Process at XII (8).

**Procedural/administrative errors**

| Statute/Policy | Errors/Inconsistencies |
|---|---|
| 34 CFR § 106.45(b)(5)(vi) Provide both parties an equal opportunity to inspect and review any evidence obtained as part of the investigation | Plaintiff's opportunity to inspect and review evidence was nearly non-existent and riddled with difficulties; further, this evidence was not made available in any meaningful way nor was it available to Plaintiff's counsel during the live hearing |
| 34 CFR § 106.45(b)(5)(vi): The recipient must make all such evidence subject to the parties' inspection and review available at any hearing to give each party equal opportunity to refer to such evidence during the hearing, including for purposes of cross-examination | Evidence was not available during the live hearing; There were 39 days between the live hearing and the last time Plaintiff's counsel saw the investigation file and evidence |
| For a Student Respondent, the Sanctioning Officer is the Vice President for Student Success (or designee). (Grievance Policy) | The Sanctioning Officer was the VP of Technology and Development, not the VP for Student Success |

**Errors in the investigation**

| Statute/Policy | Errors/Inconsistencies |
|---|---|
| "A delay in filing may impact SCAD's ability to gather reliable information …" (Grievance Policy) | The investigation commenced nearly one year after the subject incident. This delay, by SCAD's own policy words, could have affected their ability to gather reliable information |
| There is no definition of 'immediately' in SCAD's policies or processes; Plaintiff withdrew his penis from Complainant's vagina *as soon as* his brain deciphered the word stop from the dirty talk she traditionally used; Complainant testified to the dirty talk at the hearing (cannot cite to evidence because Plaintiff no longer has access) | the determination relies on withdrawal of consent. Withdrawal is NOT when the person enunciates it any more than consent is. It is when the communication is received and understood. Analogies: someone has headphones on and can't hear stop until they are taken off. In the throws of passion, if someone says "alto," that means nothing if you don't know Spanish. Similarly, right after hearing dirty talk, and in a dark location where there is no light to provide visual cues for reading non-verbal communication, the first processing by the brain takes a slight delay to code switch.

What is immediate? 0.1 seconds? 1 minute. Most 22 year-olds take more than 5 seconds to "hear" something being directed at them. Immediate is not 0.0001 seconds. Let's be reasonable! If he never stopped, we'd have a different opinion. 5 seconds seems very reasonable to use as a reaction time, especially given that he immediately got up, moved to the other side of the room, got dressed, and left. Clearly his intent was not to stay where he was not wanted. Human factors need to be considered especially with the severity of the sanctions. |

**Errors in the hearing**

The Grievance Policy states that "at the live hearing, the Hearing Officer(s) will provide the parties with an opportunity to make an opening statement, including statements about the impact of the matter on them and the requested sanctions or remedies, as applicable." However, plaintiff was not afforded an opportunity to speak about sanctions at the live hearing. More importantly, though, the Hearing Officer has zero determinative power to consider, rule on, or impose sanctions and nothing in his report does so. Therefore, there has been no meaningful opportunity to be heard on the issue by the individual tasked with evaluating and making the determination (which is the subject of the irreparable and permanent harm that we seek to enjoin) that most impacts Doe's rights.

| <u>Statute/Policy</u> | <u>Violations/Errors/Inconsistencies</u> |
|---|---|
| Having the Dean of Students preside as the Hearing Officer creates an institutional bias that could affect the outcome of the matter | The Dean of Students has loyalties and ethical obligations that create reasonable arguments that institutional bias could exist; further, there are multiple erroneous conclusions, discrepancies, and credibility weighting in the decision that are clearly refuted by the evidence |
| Despite the Complainant 'opening the door' about her previous mental health treatment, Plaintiff's advisor was not able to cross examine or ask questions related to this topic | Possibility could exist that Complainant had a prior PTSD or trauma diagnosis that could have led to her actions and/or quick behavioral changes on the night of the incident; furthermore, there are myriad possibilities that could exist that could have assisted Plaintiff in his hearing, but the Hearing Officer would not allow any questions |

| Plaintiff's counsel was not allowed to ask about the timeline of events | Discrepancies exist between Complainant's narrative about the timeline of events and the text message evidence provided by Doe; the inability to ask questions about the timeline of the evening unfairly disadvantaged the Plaintiff by not allowing him to lay a proper foundation or refute testimony to call credibility into question; "credibility should be tested through some form of live questioning of the accuser in front of the fact-finder" (see generally, Title IX cases on erroneous outcomes) |

## Errors in the decision

| **Statute/Policy** | **Errors/Inconsistencies** |
| --- | --- |
| The Hearing Officer decision shows bias against Respondent, indicative of gender bias | Patterns of "decision-making" in the Hearing Officer's decision show the gender bias (as cited above) where credibility is given to Complainant on numerous points, along with analysis of the "decision'making," whereas there is no credibility, weight, or analysis given to Plaintiff-Respondent's testimony or evidence |
| Under Title IX and SCAD's Grievance Process, remedies for Complainant should be stated in the Hearing Officer's Decision | No remedies are listed in the decision |
| No evaluation of harm, nor risk or safety assessments, were provided in the Hearing Officer Decision | Mitigating factor of the no-contact order and Plaintiff-Respondent going more than a year without violation of the order or contact with the Complainant was not given proper credit |
| Decision says that both Complainant and Respondent agree that Complainant wasn't intoxicated | This is false. Nowhere did Respondent say that Complainant wasn't intoxicated; furthermore, Complainant herself testified that she had been drinking |

| | |
|---|---|
| | Further, there is no evidence that Complainant was NOT drunk.

Plaintiff-Respondent's statement was that he bought her a double vodka and redbull when she arrived at the bar that night.

There is no expert analysis on metabolization of alcohol and "who was more intoxicated."

Significant weight, credibility, and analysis is given to Complainant due to the wrongful belief that she was not intoxicated.

This erroneous decision-making is in stark contrast of the amnesty policy in SCAD's Grievance Process.

Title IX training does not teach or allow someone to determine level of intoxication. |
| Hearing Officer's Decision states that there was no consent. | There WAS consent. This was testified to by both parties. |
| There is no allowance for the number of times that Complainant's story changed or was discrepant; meanwhile, no allowances or credibility was given to Plaintiff-Respondent's story remaining consistent throughout. | |

SCAD's Sexual Misconduct Policy permits sanctions of, including but not limited to, revocation of scholarships, suspension, expulsions, loss of privileges, and restricted access, which are "structured to end the conduct and prevent its

recurrence by the Respondent." (Grievance Process at XII (6)(2)). Before doing so, however, "the University must undertake an individualized safety and risk analysis, determine that an immediate threat to the physical health or safety of any Student or other individual arising from the allegations of Sexual Misconduct justifies removal, and provide the Student Respondent with notice and an opportunity to challenge the decision immediately following the removal." (*Id.* at III).

In addition to the charts above, the facts in this case show that an individualized safety and risk analysis was never conducted in accordance with SCAD's policy. Had a safety assessment been conducted, the facts would have clearly shown that Plaintiff is not a threat to any student, has not contacted Complainant in over a year, and has not violated the no-contact order that has been in effect in this case. Sanctions were issued

A risk analysis was not conducted to determine if Plaintiff would likely continue his alleged prohibited conduct or otherwise be a threat to the university community. SCAD assesses the risk of ongoing harm in its standards for determining whether it has jurisdiction over off campus activity. They state clearly in the Hearing Officer Decision that this reported incident met the requirement for mandatory *dismissal*, but since both parties were enrolled students at the time of the complaint, jurisdiction was established that allowed SCAD to adjudicate the

issue under their Policy. Since the jurisdiction statement does not say that a risk analysis was conducted, when safety/risk is an element to be considered in determining jurisdiction under their Policy, it follows then that the jurisdiction determination in this case was done without consideration of safety or risk – and since nothing in the Complainant's initial report left rose to the level of SCAD investigators needing to conduct a safety assessment, it logically follows that Plaintiff posed no harm to Complainant or the SCAD community.

**Errors in the appeal and sanctions**

SCAD has created a bifurcated process whereby the findings are separated from the sanctions – allowing hearings and appeals on one (the findings) but not making the same allowances for the other (the sanctions). Arguably, the sanctions will likely create greater harm and have more significant impact on a Respondent than the findings, and yet, there is no appeal process or meaningful opportunity to be heard on them. Also, the sanctions here are disciplinary in nature despite SCAD's Grievance Process where it states that sanctions are intended to prevent a recurrence of the incident.

The following is a non-exhaustive list of the errors and/or discrepancies found in the sanctions and appeals process (again, Plaintiff cannot provide this Court with any evidence due to Plaintiff not having access to it).

- Notice of findings and sanctions are given with less than 72 hours before they take effect; this unfairly biases parties who hire attorneys as advisors (like Plaintiff) because there are no judicial mechanisms for leave of court or continuances if another client matter is more pressing.

- It is impossible to mount a proper defense or appeal without a case file.

- Evidence is the very foundation of our legal system, yet SCAD sends their Respondents to hearings and appeals processes without the very evidence that could overturn their findings (including here).

- SCAD's performative security measures for their digital case files is contrary to the spirit and intention of Title IX. These security measures do not outweigh a person's due process rights and those rights granted to them through Title IX and contractual agreements

- Even courts only require redaction or filing items under seal;

- There are few to no cases in our legal system whereby a judge or trier of fact would agree that a fair hearing and appeal can occur without a client case file; and

- To state that their digital file procedures is due to security is flawed at best, because the Hearing Officer Decision and Sanctioning Officer Decision both contain identifying information and are sent via electronic mail delivery without any other security, and arguably, those documents could be used in criminal or civil court actions against Respondent; and, given the life-altering reality of having documentation that someone has been found responsible for sexual assault and rape, having these documents in the public domain is far more harmful than the other information

- Failure to provide case files to another attorney in the attorney-advisor's law firm is a broad interpretation of Title IX and Sexual Misconduct Policies.

- Judges, lawyers, clerks … rarely does a lawyer or judge work alone. The legal system is filled with clerks, associates, paralegals, administrative staff, and others who pull things offline, work on case, check emails for busy attorneys/judges, etc. Many times, lawyers don't check their own email (or, in fairness, know how to operate highly digital and secure online environments without some level of training).

- There is nothing in case law or Title IX that prohibits distribution to two people in the same law firm.

- As stated and analyzed above, there was no opportunity to appeal the sanctions.

## **CONCLUSION**

WHEREFORE, Plaintiff prays that, given the clear violations of Title IX and SCAD's Sexual Misconduct and Grievance Process Policies, and the high likelihood of irreparable harm from the disproportionate weight and volume of the sanctions placed upon Plaintiff, the Court should enter a preliminary injunction enjoining SCAD from (1) denying the Plaintiff his contractual rights under the Sexual Misconduct Policy and Grievance Process; (2) from suspending Plaintiff as a student at SCAD; (3) otherwise imposing any sanction or restriction on Plaintiff; (4) implementing appeal procedures (or, conversely, stating that Plaintiff failed to comply with the appeals deadline); (5) denying Plaintiff class attendance and

participation, and (6) refusing any ability to continue practicing and participating

on the SCAD track team, until such time as a preliminary injunction can be set for

a hearing on the matters of (1) failure to provide a full and complete downloadable,

savable, or printable copy of his investigative file along with all evidence; (2) lack

of an opportunity to submit an appeal with full and complete access to his

investigative file; (3) a meaningful opportunity to be heard regarding sanctions;

and (4) an individualized safety and risk analysis is properly conducted in

accordance with the Plaintiffs contractual rights.

 Respectfully submitted this 5th day of January, 2023.


    */s/ Joseph J. Steffen, Jr.*
    Attorney for Plaintiff
    223 W. York St.
    Savannah, GA 31401
    (912) 604-4147
    joe@joesteffen.com

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**SAVANNAH DIVISION**

| | |
|---|---|
| **JOHN DOE,** | |
| **Plaintiff,** | |
| | |
| **v.** | Case No. _____ |
| | |
| **THE SAVANNAH COLLEGE OF** | |
| **ART AND DESIGN, INC.** | |
| **Defendant.** | |

---

### AFFIDAVIT OF PLAINTIFF'S ATTORNEY, JOSEPH J. STEFFEN, JR.

Joseph "Joe" Steffen personally appeared before me, the undersigned attesting officer, duly authorized by law to administer oaths in the State of Georgia, who being duly sworn, deposes and states as follows:

1.

My name is Joe Steffen. I am a resident of Chatham County, Georgia. I have personal knowledge of the facts set forth in this Affidavit and know them to be true and correct. I am over the age of eighteen, am suffering no disabilities, and am competent to execute this Affidavit.

2.

On August 31, 2022, I was retained by Plaintiff Doe to be his advisor/attorney in the Title IX action that commenced against him August 23, 2022.

3.

I am still Doe's advisor/attorney.

4.

In the recently concluded SCAD disciplinary proceedings, (which involved numerous procedural and due process violations under Title IX) sanctions were imposed. Numerous portions of the proceedings, and the subsequent sanctions, are in violation of SCAD's own policies and without even the scantest opportunity to be heard as to the sanctions imposed including the right to offer mitigating circumstances.

1

5.

The imposed sanctions are scheduled to take effect immediately and will effectively remove John Doe from school for a period of a year, dismantle his athletic and academic scholarships, and taint him permanently with the allegations and punishment imposed all of which would cause him irreparable and permanent harm.

6.

Imposition of this Order will result in no harm to SCAD in that it simply restores the status quo ante which has existed for nearly a year while this matter has traveled through the tedious investigative process. Further, a no contact order has been in place this entire time and no violation of that Order has occurred or been alleged.

7.

I certify and attest that concurrent with the filling of the Emergency Motion for Temporary Restraining Order and Preliminary Injunction, I will perform the following:

1. Furnish a copy of all filed documents via electronic mail (email) to the Title IX Coordinator at SCAD with whom I've communicated with throughout this case. I have sufficient reason to believe that any documents sent to the coordinator via email would be timely received.
2. Send via certified mail a copy of all filed documents to SCAD's registered agent, as listed on the Ga. Secretary of State's website:
   Hannah Yi Flower
   1600 Peachtree St. NW
   Atlanta, GA 30309-2403
3. Send via certified mail a copy of all filed documents to SCAD's principal office address, as listed on the Ga. Secretary of State's website, to:
   PO BOX 3146
   Savannah, GA 31402

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 5th day of January, 2023 in Chatham County, Georgia.

_____
Joseph J. Steffen, Jr.
*Attorney for Plaintiff-Respondent*

CAROLINA GAMEZ
NOTARY
PUBLIC
CHATHAM COUNTY, GEORGIA

My commission
expires May 23, 2026

Carolina Gamez

2